OPINION
Appellants Goss Realty Company, Goss Brothers Tire Company, Clarence Goss and David Goss appeal a judgment of the Environmental Review Appeals Commission affirming an order of appellee Donald Schregardus, Director of Environmental Protection, which required appellants to remove scrap tires from their property:
ASSIGNMENTS OF ERROR
ASSIGNMENT OF ERROR ONE
 THE PROVISIONS OF OHIO REVISED CODE CHAPTER 3734 AND/OR THE PROVISIONS OF OAC SECTION 3745-27 AND/OR THE APPLICATION OF SAID LAW AND REGULATIONS BY THE ENVIRONMENTAL REVIEW APPEALS COMMISSION IN THE MATTER INSTANTER VIOLATES THE DUE PROCESS PROVISIONS OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION AS WELL AS PROPERTY PROVISIONS OF ARTICLE 1, SECTION 1 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR TWO
 THE ENVIRONMENTAL REVIEW APPEALS COMMISSION ERRED IN NOT FINDING THAT THE OHIO ENVIRONMENTAL PROTECTION AGENCY WAS ESTOPPED FROM ORDERING THE REMOVAL OF TIRES FROM APPELLANTS' PROPERTY
ASSIGNMENT OF ERROR THREE
 THE ENVIRONMENTAL REVIEW APPEALS COMMISSION ERRED IN FINDING THAT THE OHIO ENVIRONMENTAL PROTECTION AGENCY HAD JURISDICTION OVER THE TIRES AND/OR THE LOCATION OF THE TIRES.
ASSIGNMENT OF ERROR FOUR
 THE ENVIRONMENTAL REVIEW APPEALS COMMISSION ERRED IN FINDING THE DIRECTOR'S ORDERS TO BE LAWFUL AND REASONABLE AS REQUIRED BY OHIO REVISED CODE SECTION 3745.05.
In 1961, appellant Clarence Goss acquired property on Baughman Run Road, in Muskingum County, Ohio. This property is the subject of the instant appeal. A portion of the property was strip-mined between August, 1970, and March, 1972. Beginning in 1973, appellants began dumping scrap tires on the property. On October 17, 1974, an inspection officer with the Ohio Department of Natural Resources, Division of Reclamation, inspected the property. On November 21, 1974, the Division issued Order No. 870 to appellants, prohibiting further reclamation at the property other than planting. The Division found that the reclamation occurring on the property did not meet R.C. 1513.16 (A) and (C). This order contained three conditions, including an order that appellants remove or bury the tires and other debris located in the pit area in the eastern portion of the property. Subsequently, the Division issued Order No. 1055, which modified Order No. 870. Order No. 1055 gave appellants sixty days to remove or bury the tires. Appellant filed a notice of appeal of Division Order No. 1055 with the Reclamation Board of Review. Following a hearing, the Board of Review vacated Division Order No. 1055, concluding that R.C. 1513.16 (C) did not support the requirement that tires be removed from the area. On October 25, 1988 and June 1, 1990, the Ohio Environmental Protection Association received complaints alleging open dumping on appellants' property. The June 1 complaint specifically related to the land filling of the tires at the property. On November 19, 1992, a representative of the Division of Solid and Infectious Waste Management met appellant David Goss to inform him that the agency had received a complaint concerning waste tires disposed of on the property. David Goss confirmed that tires from Goss Brothers Tire were going to the property. Thereafter, the inspector met with appellant Clarence Goss at the property. At the site, the inspector observed a five to six acre coal mining strip head that had been approximately thirty feet deep. Approximately three acres of the pit had been filled with tires, covered with soil, and seeded to provide a grass cover. The remaining area contained thousands of uncovered tires. Additional waste was located on the site including office records, household trash, and steel drums. On December 17, 1992, the inspector sent a notice of violation letter to appellant Clarence Goss informing him that all the waste at the site was classified as solid waste, and in one case concerning radiator coolant, potentially hazardous waste. On January 8, 1993, an attorney acting on behalf of appellants informed the inspector that all of the waste, with the exception of the tires, had been removed and dealt with properly. As to the tires, the letter indicated that they were being used as fill to repair old mining damage pursuant to a November 6, 1975 decision of the Reclamation Board of Review. As a result of this letter, the inspector consulted with the Ohio Department of Natural Resources concerning the 1975 decision. After reviewing the order, the Department of Natural Resources indicated that the intent of the Reclamation Board of Review was not to grant appellants permission to dispose of scrap tires at the strip mine pit, but rather to explain that the reclamation law did not prohibit the activity, and therefore the Board of Review had no authority to prohibit such activity. The EPA then sent appellant a second notice of violation, indicating that the practices at the site were in violation of Ohio Administrative Code 3745-27-05. The letter indicated that the tires were classified as solid waste, and may only be disposed of at a licensed solid waste facility. The letter further explained to appellants that the Reclamation Board of Review ruling did not specifically give appellants permission to use the tires as landfill, but rather indicated that they did not have the authority to order the tires removed. Appellant again responded with an explanation that he would continue burying the tires until a market for them developed. He stated, "Tires are of no threat environmentally, are doing no harm on my property, at an elevation and distance impossible to see from Baughman Run Road." At a follow-up inspection, the EPA discovered that all waste observed earlier at the site had been removed, except for the tires. In addition, new waste tires were being brought on site, and stacked on the property. As a result of this visit, a third notice of violation letter was sent to appellants indicating that continued open dumping of the tires violated OAC 3745-27-05. In addition, the letter notified appellants they could not store the tires by covering them with soil. Appellants were notified that compliance with the order could be achieved by excavating the buried tires and disposing of them at an approved solid waste disposal site, or storing them in accordance with OAC 3745-27-05 (B). Again, appellants responded with a letter indicating that they did not intend to remove the tires. Appellants also claimed that not one tire was placed in that pit after the prior inspection. A fourth notice of violation letter was sent to appellants, indicating that photographs taken at the site on November 20, 1992, and April 19, 1993, confirmed that additional tires had been placed in the pit after November 20, 1992. Appellants were informed that they could correct open dumping by excavating the buried tires, and limiting each pile of tires to twenty-five hundred square feet at the base. They were also informed to include 50 foot fire lanes between each pile of tires. Appellants were instructed to take control measures for mosquitos, including tarps, larvicide, mosquito netting, and/or shredding the waste tires to prevent accumulation of water. Appellants were also informed of the requirements to obtain a permit to operate a facility to dispose of tires on the property. Appellants responded by indicating again that they felt that Division Order No. 870 permitted the pond to be used to dump tires and cover them with dirt. On November 30, 1994, an environmental specialist and several other inspectors from the EPA conducted an investigation of the property. Following this visit, a fifth notice of violation letter was sent to appellants. The scrap-tire storage requirements were once again outlined. The notice indicated that although several stacks of scrap tires appeared to be in compliance with the rule, a substantial number had been buried at the base of the strip mined highwall, which appeared to flood during rainy periods. By June 28, 1995, appellants had not yet responded to the December, 1994 notice of violation. At that time, the Assistant District Chief sent appellants a letter indicating that the EPA now felt they had exhausted all means to effect compliance, and considered referring this case to the headquarters in Columbus for enforcement action. Subsequently, a meeting was held between representatives of the EPA and appellant Clarence Goss. Once again, appellants refused to remove the tires, continuing to maintain the 1975 order from the Bureau of Reclamation gave them the right to use the tires to reclaim the property. On April 12, 1996, in recognition of appellants' continuing refusal to remove the scrap tires, the EPA staff recommended to the Director that final findings and orders be issued to appellants to address the continuing violations. Accordingly, on October 28, 1996, the Director issued final findings and orders to appellant Clarence Goss, the owner of the property, and the remaining appellants. The orders concluded that appellants caused opening dumping on the property in violation of R.C. 3734.03 and Ohio Administrative Code 3745-27-05 (C). In the orders, the Director outlined the requirements of OAC 3745-2760, concerning the temporary storage of scrap tires until the owner or operator obtained the registration certificate or permit. The Director ordered appellants to immediately cease dumping scrap tires and other waste at the property; excavate all tires within 180 days and either remove them or properly dispose of them at a licensed facility, or to properly store and manage all tires in accordance with regulations; within 180 days to submit an application for a scrap tire facility license or a permit; and within 210 days to document the sale, transportation, and disposal of any tires currently located at the property. Appellants appealed the order to the Ohio Environmental Review Appeals Commission. A full hearing was held before the Commission. At the hearing, appellants presented evidence that the tires did not provide habitat for disease-bearing insects, and the tires were not a fire hazard, in contrast to the concerns of the Director. Following the hearing, the Appeals Commission affirmed the order of the Director. Appellants filed a notice of appeal directly to this court, pursuant to R.C. 3745.06.
 I
Appellants argue that the provisions of the Ohio Revised Code Chapter 3734 and of Ohio Administrative Code Section 3745-25 violate his rights to substantive due process, pursuant to theFourteenth Amendment to the United States Constitution, and Article 1, Section 16 of the Ohio Constitution. He argues that the regulations do not require a specific finding that his particular violation is dangerous to public health or safety, or to the environment, but a violation may be found solely upon a showing of non-compliance with the regulations. Appellants argue that the evidence presented at the hearing demonstrated that despite non-compliance with regulations concerning stacking, burying tires, size of stacks, fire lanes, and mosquito spraying, fire officials were not concerned with a fire breaking out at the site, nor did neighbors notice an unusual number of mosquitos. The Environmental Appeals Commission properly declined to address the constitutional question, as the commission did not have jurisdiction to consider this issue. Appellants essentially argued before the commission that the regulations concerning storage are without basis in fact or logic. This claim amounts to a substantive due process claim. See City of Las Vegas v. Clark County (9th Cir. 1984), 755 F.2d 697, 704. Because the State's action neither infringes on a fundamental interest nor discriminates against a suspect class, the tire storing regulations need only bear a rational relation to a legitimate government interest to survive. Id. Because the Commission was without jurisdiction to consider the constitutional claim, the evidence was relatively undeveloped concerning this issue. However, Chapter VII of the State Solid Waste Management Plan of 1995 was admitted at the hearing as Exhibit F. This Chapter concerns scrap tires. The Plan explains that the scrap tire regulations were introduced because of concerns with mosquitos and fire. Abandoned or improperly stored tires constitute an optimal habitat for at least four types of disease-bearing mosquitos in Ohio, including mosquitos carrying encephalitis, dog heart worm, and yellow fever. In addition, commerce in mosquito-infested tires is a vehicle for interstate spread of mosquitos. As of May of 1992, a mosquito which had spread from Houston, Texas, was detected in three Ohio counties. This exhibit also explained that stockpiled tires represent vast collections of highly combustible materials, and once ignited, tire fires can be extremely hard to extinguish. As the tires burn, quantities of oil are released, and noxious emissions pose a hazard to humans in the environment. Once extinguished, unburned oil not recovered threatens ground water, and surface water. One of the most serious tire fires in Ohio occurred in Lancaster in May of 1990, and took firefighters more than a week to extinguish. Over a period of slightly more than two years, 103 fires attributed to scrap tires were reported on the Ohio EPA's Emergency Hotline. Richard Large, the Supervisor of Scrap Tire Management, testified that the Ohio General Assembly passed scrap tire laws due to a situation around the state which was "out of control," with an enormous number of abandoned tires throughout the state, virtually unregulated. Tr. 159. The regulations concerning storage of tires in accordance with rules designed to allow access to emergency fire vehicles, and to require spraying for mosquitos, clearly bear a rational relation to promoting the health and safety of the citizens of the state of Ohio, and to protecting the environment from toxic emissions and potential contamination of ground water due to oil seeping through the ground following fires. Appellants argue that their particular tire dump does not pose these particular problems. Appellants had one tire fire occurring in a stack of seven off-road tires. They presented evidence that soil testing following the fire did not indicate the presence of any contaminants. Further, neighbors of the tire dump testified that they did not notice an unusual number of mosquitos in the area. However, as testified by Richard Large, the concern of the General Assembly was the large number of such tire pits becoming prevalent throughout the state. While the problems may not be immediately obvious with appellants' dump, the potential for such problems is apparent, and the non-conforming dump is part of a larger problem throughout the state. Finally, appellants argue that the order constitutes an unconstitutional "taking" of their property in violation of the United States and Ohio Constitutions. The common purpose behind both the United States and Ohio taking clauses is to bar government from forcing some people alone to bear public burden which, in all fairness and justice, should be borne by the public as a whole. State ex rel. Horvath v. State Teacher's Retirement Board (1998), 83 Ohio St.3d 67,70, cert denied, (1999), 119 S.Ct. 1115. A taking may be more readily found when the interference with property can be characterized as a physical invasion by the government, than when the interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good. Id. In the instant case, the government did not physically invade appellants' property. Rather, the scrap-tire regulations are public programs designed to promote the common good by protecting the public from hazards associated with fire and disease-carrying mosquitos. In addition, excavation and removal of the tires was not the only option available to appellants. Appellants were informed of the possibility of temporarily storing the tires at the site, as long as they complied with licensing and registration requirements. Appellants were further informed that they could apply for a permit issued by the Ohio EPA which would allow tire disposal at the site, in accordance with R.C. 3734.71 (B) and Ohio Administrative Code 3745-27-60. After initially beginning the permit process, appellants abandoned all attempts to comply. The Director's order did not constitute an unconstitutional taking of appellants' property. The first assignment of error is overruled.
 II
Appellant argues that the Director is estopped from enforcing the scrap tire regulations, as the Bureau of Mining Reclamation told them in 1975 that he was permitted to bury the tires. As a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function. Ohio State Board of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143, 146. If a government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined. Id., citing Heckler v. Community Health Services (1984), 467 U.S. 51, 59. Therefore, estoppel cannot be used to uphold actions that are in violation of law. Id. In the instant case, appellants are improperly attempting to use estoppel to deprive the state of the right to enforce the environmental laws of the state. The Ohio EPA is not estopped from forcing appellants to comply with the scrap tire regulations by the 1975 Bureau of Reclamation decision, even assuming arguendo that such a decision expressly permitted appellant to bury the tires. The second assignment of error is overruled.
 III
Appellants argue that the EPA did not have jurisdiction over the tires and/or location of the tires, as the Bureau of Mining Reclamation had previously exercised such jurisdiction. Appellant cites State ex rel. Ferris v. Shaver (1955), 163 Ohio St. 325, for the proposition that where two different agencies have authority over the same subject matter, exclusive authority rests with the agency that acts first. In the instant case, the Commission properly concluded that the 1975 RBR decision stated that the Department of Natural Resources did not have authority under the reclamation clause to require appellants to remove the scrap tires from the site. However, the EPA does have such authority pursuant to statute. Further, when the Reclamation Board of Review vacated Order No. 1055 concerning removal of the tires, the bond on the reclamation license was released, and the reclamation was deemed completed. Therefore, the Ohio Department of Natural Resources did not exercise jurisdiction over the former strip mines after 1975. The third assignment of error is overruled.
 IV
Appellants argue that the Appeals Commission erred in finding that the decision of the Director was reasonable. It is clear from the evidence presented, which is essentially undisputed by appellant, that the site did not comply with Ohio Administrative Code3745-27-60 (B), nor with the previous version of this rule, Ohio Administrative Code 3745-27-03 (B). Tires had been buried, and were beginning to re-surface, or "flag" through the ground. While appellants made some attempt to stack some of the tires, an enormous number of tires remained dumped in a pit. The evidence reflected that out of four piles of tires at the site, only two were in compliance with the regulations concerning size of stacks and distance between stacks. Appellant Clarence Goss conceded that he had not sprayed for mosquitos in accordance with regulations, arguing that it was too cold in the month of April for mosquitos to breed. The record reflects the EPA attempted numerous times over a period of years to work with appellant to give him an opportunity to bring the site into compliance, or to apply for a permit, before finally issuing an order of removal. The evidence reflects that had appellant completed the process to become a Registered Scrap Tire Facility, he would have had a five-year draw-down period within which he could remove, re-stack, and dispose of a percentage of the total volume of tires per year, making the result less burdensome than what has occurred by his failure to cooperate with the numerous requests of the EPA. Having failed to take advantage of the various proceedings to make the result less burdensome, appellants cannot now complain that the Director's order that they immediately remove the tires is unreasonable. The fourth assignment of error is overruled.
The judgment of the Ohio Environmental Review Appeals Commission is affirmed.
By Gwin, P.J., Hoffman, J., and Farmer, J., concur