OPINION
{¶ 1} On April 9, 2001, appellant, Robert McNamara, applied for a code compliance inspection with appellee, the City of Canton, on property he rented to turn into a dance center called "Moonlight Ballroom." On April 11, 2001, the building department inspected the property and prepared a report which listed deficiencies to be corrected before a certificate of occupancy would be issued.
 {¶ 2} In June of 2001, appellant applied for a liquor license for the Moonlight Ballroom.
 {¶ 3} On November 14, 2001, appellee issued a certificate of occupancy with an A-3 use group. This certificate permits assembly space only, not the sale of alcoholic beverages.
 {¶ 4} On March 27, 2002, appellant obtained a D-5 liquor permit.
 {¶ 5} On February 12, 2003, the safety director sent a letter to appellee's chief building official, requesting a safety inspection due to appellant's request for an entertainment club permit. This permit is the first step in applying for a certificate of occupancy with an A-2 use group which would permit the sale of alcoholic beverages.
 {¶ 6} On March 5, 2003, appellant applied for a code compliance inspection for an A-2 use group. The building department inspected the property and prepared a report which listed several requirements appellant needed to meet i.e., ADA compliance, fire code compliance, submit structural engineering reports, etc.
 {¶ 7} On March 7, 2003, appellee issued a stop work order, shutting down appellant's business.
 {¶ 8} On September 9, 2003, appellant, together with Kim McNamara, filed a complaint against appellee, claiming damages from appellee's actions. An amended complaint was filed on March 1, 2004, claiming estoppel and negligence. Appellee filed a motion for summary judgment on March 24, 2004. By judgment entry filed May 11, 2004, the trial court granted the motion, finding appellee was immune from liability pursuant to R.C. 2744.02(A)(1).
 {¶ 9} Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 10} "The trial court erred by finding that estoppel was unavailable to prevent the city from revoking a valid certificate of occupancy, when there was no evidence that the public welfare would be endangered by the estoppel and the appellants had reasonably relied on the city's conduct and could not have known that the city's conduct was misleading."
 II {¶ 11} "The trial court erred by not finding an estoppel against the city of canton when there were no public welfare issues, and private property rights would be lost in an arbitrary deprivation akin to prohibited retrospective zoning."
 III {¶ 12} "The trial court committed error by finding that estoppel of the city was prohibited by the sovereign immunity statute, chapter 2744 of the revised code."
 I, II {¶ 13} Appellant claims the trial court erred in not finding appellee was estopped from issuing a stop work order prohibiting any use of the Moonlight Ballroom. We disagree.
 {¶ 14} Generally, "the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." OhioState Board of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143, 146. TheFrantz court explained the following at 146:
 {¶ 15} "Defendants argue that manifest injustice will result from revocations of their licenses because they spent money improving their pharmacy business after the board became aware of the violations. In essence, they contend that had the board initiated the disciplinary actions much sooner than it did, they would not have expended their resources improving their business.
 {¶ 16} "The board cannot be estopped from its duty to protect the public welfare because it did not bring a disciplinary action as expeditiously as possible. * * * If a government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined. * * * To hold otherwise would be to grant defendants a right to violate the law." (Citations omitted.)
 {¶ 17} Appellants argue there was no evidence that the public welfare would be endangered, and appellee misled them. In support of their arguments, appellants cite the case of City of Oxford v. Day (March 16, 1998), Butler App. No. CA96-09-183, which cites the case of Pilot OilCorp. v. Ohio Department of Transportation (1995), 102 Ohio App.3d 278, wherein the Pilot court held the following at 283:
 {¶ 18} "The promissory estoppel doctrine may be applied against the government in the following circumstances. Estoppel may be imposed in contract situations where the subject matter of a contract is not illegal or ultra vires. * * * Further, estoppel may apply where a municipality made a representation, which was within its power to make and which induced reliance. * * * In a case more closely on point, a new city tax commissioner may be estopped from denying the validity of his predecessor's interpretation of a municipal tax ordinance where his predecessor made verbal and written assurances to a company which induced that company to move its factory to the city. * * *
 {¶ 19} "In light of the foregoing exceptions, we conclude that promissory estoppel applies against the state under the circumstances of this case. Specifically, we hold that, where (1) the state uses its discretion in the interpretation of a law or rule, (2) the state's interpretation is not violative of legislation passed by the General Assembly of Ohio, and (3) the elements of promissory estoppel are otherwise met, promissory estoppel may be employed to bar the state from asserting a contrary interpretation where the state had full opportunity to make an informed decision and, in fact, did make an informed decision." (Citations omitted.)
 {¶ 20} Appellants also claim appellee's actions denied them an economically viable use of their property. In support of this argument, appellants cite to zoning cases which we find inappropriate sub judice.
 {¶ 21} For the following reasons, we find the doctrine of estoppel is not a viable defense against the city under the facts of this case. Appellants herein applied for and received a certificate of occupancy for an A-3 use group. This certificate permits assembly space only, not the sale of alcoholic beverages. The application described the business as a "dance center." See, Plaintiff's Exhibit C, attached to Deposition of Roger Westfall. Thereafter, appellants applied for a liquor permit. Appellee was unaware of appellants' plans until appellants applied for an entertainment club permit to sell alcoholic beverages.[1] An entertainment club permit requires an A-2 certificate of occupancy.
 {¶ 22} The undisputed facts establish appellants requested an A-3 certificate of occupancy which appellee granted, and it was not until two years after its issuance that appellants applied for an A-2 certificate of occupancy. Based upon these facts, we conclude neither equitable estoppel nor promissory estoppel is a valid defense. All of appellee's official actions in issuing the stop work order surrounded appellants' request for the A-2 certificate. Any reliance by appellants could only have been for the uses contained in the A-3 certificate. Clearly appellee's official actions centered upon appellants' request for an A-3 certificate and not the A-2 uses contemplated by appellants. We find the doctrine of estoppel is not available against appellee, and no evidence leads us to manufacture an equitable remedy given the facts sub judice.
 {¶ 23} Assignments of Error I and II are denied.
 III {¶ 24} Appellant claims the trial court erred in finding the doctrine of sovereign immunity shielded appellee from liability for their actions. We disagree.
 {¶ 25} The ability to grant or deny a certificate of occupancy is clearly a governmental function. R.C. 2744.01(C) defines "governmental function" as follows:
 {¶ 26} "(C)(1) `Governmental function' means a function of a political subdivision that is specified in division (C)(2) of this section or that satisfies any of the following:
 {¶ 27} "(a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
 {¶ 28} "(b) A function that is for the common good of all citizens of the state;
 {¶ 29} "(c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function."
 {¶ 30} When exercising a governmental function, a city is immune from suit unless an exception applies:
 {¶ 31} "For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1).
 {¶ 32} Exceptions are set out in R.C. 2744.02(B), and none apply in this case:
 {¶ 33} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 34} "(1) Except as otherwise provided in this division, political subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority. * * *
 {¶ 35} "* * *
 {¶ 36} "(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair and other negligent failure to remove obstructions from public roads, except that it is a full defense to that liability, when a bridge within a municipal corporation is involved, that the municipal corporation does not have the responsibility for maintaining or inspecting the bridge.
 {¶ 37} "(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.
 {¶ 38} "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code, including, but not limited to, sections 2743.02 and 5591.37
of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term `shall' in a provision pertaining to a political subdivision."
 {¶ 39} Based upon the statute language cited supra, we conclude the cause of action for damages in this case is barred by R.C. 2744.01 et seq.
 {¶ 40} Assignment of Error III is denied.
 {¶ 41} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.
[1] Appellants claim appellee should have known the business would include the sale of alcoholic beverages because of the type of equipment being installed.