OPINION
{¶ 1} Appellant, Stacey Melick, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court affirmed the decision of appellee, Ohio Department of Administrative Services, to deny appellant's disability benefits.
 {¶ 2} Appellant works for the Ohio Department of Health. She took time off from work on May 29, 2002, to undergo back surgery after experiencing back pain from degenerative disc disease. Appellee approved disability benefits for appellant while she was off work. Appellant served "a waiting period" from May 29, 2002 to June 11, 2002, before receiving disability benefits. (Tr. at 7.) Appellant's disability benefits commenced on June 12, 2002.
 {¶ 3} Ultimately, appellant's physician indicated that appellant could return to work on September 16, 2002, with regular breaks during the day and with restrictions on lifting and sitting. Accordingly, appellant returned to work full-time on September 16, 2002.
 {¶ 4} After returning to work, appellant again experienced back pain. Appellant told her supervisor, Anthony Pulcrano, about the pain. Pulcrano suggested that appellant speak with her doctor about working part-time. On October 10, 2002, appellant went to her doctor, who recommended that appellant work four hours per day until a re-examination on December 3, 2002.
 {¶ 5} Appellant filed for disability benefits on October 11, 2002. She gave her application to Department of Health Benefits Coordinator Belinda Kerr. Appellant continued to work full-time, awaiting permission to begin a part-time schedule.
 {¶ 6} On October 17, 2002, Pulcrano contacted appellant and told her that she could work four hours per day until she met with her doctor on December 3, 2002. Pulcrano provided this information after Kerr told him that "we had to get [appellant] off full time and on 4 hour days." (Dec. 3, 2002 Statement from Pulcrano.) Appellant worked part-time until December 9, 2002, the date that her doctor indicated that she could resume a full-time schedule.
 {¶ 7} In the meantime, in November 2002, appellee denied appellant's benefits because she was not off work for 14 consecutive days in accordance with administrative rules governing disability benefits eligibility. Appellant appealed, and a hearing officer for appellee held an administrative hearing.
 {¶ 8} At the hearing, appellee's benefits management representative, Melinda Humphrey, testified that appellant sought disability benefits "with the date last worked of October 18th, 2002 and returning to work on October 20th, part time." (Tr. at 7-8.) Humphrey explained that appellee denied appellant's benefits because she was not off work for a minimum of 14 consecutive days. Humphrey noted that:
* * * To be eligible for reinstatement of disability leave benefits, an employee must remain disabled and off work for at least 14 consecutive days. And employees may only be reinstated on a parttime [sic] basis if they remain disabled for the 14 days and are receiving disability leave benefits prior to returning to work parttime [sic].
(Tr. at 8.)
 {¶ 9} Appellant testified at the hearing and indicated that she spoke with Kerr about her disability benefits application on October 15, 2002. According to appellant, Kerr told her that she "didn't have to do a waiting period" to be eligible for the subsequent disability benefits. (Tr. at 16.) Furthermore, according to appellant, Kerr stated that she "can do a return to work program * * * they do allow that up to maybe six weeks." (Tr. at 19.) Appellant also countered Humphrey's testimony about when she started working part-time. According to appellant, she started working part-time on October 17, 2002, not October 20, 2002.
 {¶ 10} The hearing officer agreed with appellee's initial decision and rationale and recommended that appellee deny appellant's claim. Appellee adopted the recommendation.
 {¶ 11} Appellant then appealed to the trial court. The trial court affirmed appellee's decision, noting that appellant did not qualify for disability benefits because she failed to be off work for the requisite minimum of 14 consecutive days.
 {¶ 12} Appellant appeals, raising one assignment of error:
Assignment of Error No. 1: The Court of Common Pleas Erred In Finding that the Administrative Decision Below Was In Accordance With Law and Was Supported By Substantial, Reliable, and Probative Evidence.
 {¶ 13} In her single assignment of error, appellant argues that the trial court erred by concluding that appellee properly denied appellant's disability benefits because she was not off work for a minimum of 14 consecutive days before working part-time. We disagree.
 {¶ 14} When reviewing an administrative order, a trial court determines whether the order is supported by reliable, probative and substantial evidence and is in accordance with the law. R.C. 119.12; Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. Our review "is even more limited than that of the trial court." Id. We will not reverse the trial court's decision absent an abuse of discretion. Id. An abuse of discretion connotes more than an error of judgment; it entails a decision that is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 15} Appellee administers the disability benefits program. R.C.124.385(E); Ohio Adm. Code 123:1-33-12(C). Accordingly, we defer to appellee's interpretation of its own disability benefits rules "if such an interpretation is consistent with statutory law and the plain language" of the rules. State ex rel. DeMuth v. State Bd. of Edn. (1996),113 Ohio App.3d 430, 433.
 {¶ 16} Ohio Adm. Code 123:1-33-12(A) governs a state employee's eligibility for disability leave benefits and provides, in pertinent part, that an employee with "a disabling illness, injury, or condition that will last more than fourteen consecutive calendar days * * * is eligible for disability leave benefits." Thus, an employee must wait an initial period of 14 consecutive days before obtaining disability benefits. Ohio Adm. Code 123:1-33-12(B). The employee may not work during the waiting period, but may use accrued paid leave. Id. The disability benefits commence after the 14-day waiting period. Id.
 {¶ 17} An employee with a "related disability that occurs within six months of a return to active work status" is eligible to receive disability leave benefits "if the employee remains disabled and off work for at least fourteen consecutive calendar days." Ohio Adm. Code123:1-33-12(F). Although the employee must be off work on a "related disability" for at least 14 consecutive days, the employee will receive benefits on "the first day of the subsequent disability," and will not have to use accrued paid leave while off work. Ohio Adm. Code123:1-33-12(F) is in harmony with Ohio Adm. Code 123:1-33-12(A), which specifies that an employee is generally eligible for disability benefits for a condition that lasts more than 14 consecutive calendar days.
 {¶ 18} Here, the hearing officer and the trial court concluded that appellant was not eligible for disability benefits pursuant to Ohio Adm. Code 123:1-33-12(F) because appellant sought disability benefits for back problems that recurred within six months of her returning to work on September 16, 2002, and because she was not off work for the requisite minimum of 14 consecutive days. Nonetheless, appellant claims that the Department of Health approved her participation in a transitional work program pursuant to Ohio Adm. Code 123:1-33-12(D)(2). Under Ohio Adm. Code123:1-33-12(D)(2):
* * * A transitional work program may be provided by the appointing authority for thirty days. Participation in the program shall be based upon the recommendation of the employee's attending physician. * * * An employee will continue to receive disability leave benefits for the hours the employee is unable to work * * *.
 {¶ 19} Appellant's argument fails because appellee, not the Department of Heath, administers the disability benefits program, which includes exclusive authority to deny disability benefits. R.C. 124.385(E); Ohio Adm. Code 123:1-33-12(C).
 {¶ 20} Moreover, Ohio Adm. Code 123:1-33-12(D) contains no provisions that dictate how or when an employee becomes eligible to receive disability benefits while participating in a transitional work program. The provision merely discusses the structure of the transitional work program.
 {¶ 21} Rather, Ohio Adm. Code 123:1-33-12(F) explicitly addresses appellant's eligibility to receive disability benefits on her October 11, 2002 claim. Appellant's claim is based on back problems that relate to the previous disability that kept her off work and on disability leave until September 16, 2002. Therefore, appellant's subsequent October claim is a "related disability that [occurred] within six months of a return to active work status," factors in Ohio Adm. Code 123:1-33-12(F). Consequently, pursuant to Ohio Adm. Code 123:1-33-12(F), appellant would be eligible for disability benefits if she were "off work for at least fourteen consecutive calendar days." Because appellant was off work, if at all, for a maximum of two consecutive days on October 18 and 19, 2002, she did not become eligible for disability benefits on the October claim.
 {¶ 22} Consequently, appellant's previous 14-day waiting period from May 29, 2002 to June 11, 2002, does not satisfy the requisite period outlined in Ohio Adm. Code 123:1-33-12(F). Appellant returned to "active work status" and needed to re-establish eligibility for disability benefits by remaining "off work for at least fourteen consecutive calendar days" on the October claim. Id.
 {¶ 23} Contrary to appellant's assertions, the rules governing the transitional work program in Ohio Adm. Code 123:1-33-12(D) do not apply to appellant's circumstances. Ohio Adm. Code 123:1-33-12(D)(2) indicates that an employee will "continue to receive disability leave benefits for the hours the employee is unable to work." By using the term "continue," the rule presumes no gap in benefits. Here, appellant's disability benefits terminated when she returned to work full-time on September 16, 2002. Likewise, the rule states that "[b]efore a return to work on a parttime basis, the employee shall provide * * * a physician's statement indicating the number of hours the employee could work[.]" Ohio Adm. Code123:1-33-12(D)(1). Such language confirms that the transitional work program is only available when an employee transitions from being off work on disability leave directly into a part-time work status. Likewise, the language indicates that an employee must obtain permission to participate in a transitional work program before returning to work on active status. Again, appellant had already returned to work full-time in September.
 {¶ 24} We further reject appellant's contentions that appellee is punishing her for being a conscientious employee who tried to work full-time before discovering her limitations. While we acknowledge the apparent harshness of these rules as they apply to appellant, policy considerations support requiring an employee to be off work for 14 consecutive days to establish disability benefit eligibility. The time period encourages an employee to return to work only when healthy, and be able to perform his or her duties after suffering a disabling condition. Likewise, the time period discourages an employee from abusing disability benefits to maintain an intermittent work schedule. Such a scenario undermines an employer's ability to efficiently assign projects or schedule shifts to cover the intermittently absent employee.
 {¶ 25} Appellant further contends that denying her benefits would lead to an absurd result by allowing appellee to deny benefits to an employee who returned to work for one hour before realizing that he or she was still suffering from a disability. However, appellant's alternative scenario is inapplicable; appellant worked for over a full month, not one hour, after returning from disability leave. Likewise, appellant's contention underscores the above policy considerations behind the 14-day time period. As noted above, the time period discourages an employee from abusing disability benefit provisions by demanding benefits through an intermittent work schedule, thereby undermining an employer's ability to efficiently assign projects or schedule shifts.
 {¶ 26} Lastly, appellant argues that equitable estoppel precludes appellee from denying disability benefits because the Department of Health pre-approved her participation in the transitional work program. Equitable estoppel applies against a party that "induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." State ex rel. Chavis v.Sycamore City School Dist. Bd. of Edn. (1994), 71 Ohio St.3d 26, 34.
 {¶ 27} Appellee counters that the Department of Health made no representation that appellant would receive part-time disability benefits. However, Kerr discussed with appellant the transitional work program and indicated that appellant "didn't have to do a waiting period" to be eligible for disability benefits. (Tr. at 16.) Thereafter, Pulcrano told appellant that she was to work only four hours per day until she met with her doctor on December 3, 2002. Thus, Kerr and Pulcrano allowed appellant to believe that she would receive disability benefits on her October claim while working part-time.
 {¶ 28} Nonetheless, courts generally do not apply equitable estoppel against the state or its agencies in the exercise of a governmental function. Ohio State Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,145-146.
 {¶ 29} Appellant relies on Hurst v. Brown (Sept. 26, 1991), Noble App. No. 205, to assert that equitable estoppel applies against appellee despite appellee's state agency status. In Hurst, Ohio Department of Transportation employees informed property owners that they could construct a building even though it encroached on the state's right-of-way on a highway. Subsequently, the Department of Transportation sought an injunction to have the property owners remove the part of the building that encroached on the right-of-way. The appellate court held that equitable estoppel precluded the agency from seeking the injunction because the agency's employees "led [appellants] astray." Id.
 {¶ 30} However, Hurst is inapposite. In Hurst, the appellate court applied equitable estoppel against an agency for its own employees' conduct. Here, as noted above, no employee of appellee advised appellant that she could work part-time and receive disability benefits without being off work for an initial 14 consecutive days. Thus, unlike Hurst, we have no cause to compel appellee to comply with representations it did not induce.
 {¶ 31} Moreover, in State ex rel. Shumway v. State Teachers RetirementBd. (1996), 114 Ohio App.3d 280, 289, we previously declined to apply equitable estoppel under similar circumstances to appellant. In Shumway,
a retiree relied to his detriment on erroneous benefits information that a retirement system's counselor provided. Due to changes in benefits law, the retirement system actually computed the retiree's benefits to be less than the amount that the counselor indicated. The retiree claimed that equitable estoppel prevented the retirement system from providing the lower benefit amount. We did not apply equitable estoppel, noting that it "is well settled that, as a general rule, equitable estoppel is not applied against a state or its agencies in the exercise of a governmental function." Id., citing Frantz at 145-146. Accordingly, here, like Shumway, and unlike Hurst, appellant's case falls within the general rule that precludes us from applying equitable estoppel against a state agency.
 {¶ 32} In reviewing appellant's case, we recognize that the Department of Health had discretion to allow appellant to work part-time, irrespective of rules governing disability benefits. However, appellant could only receive disability benefits by meeting eligibility requirements pursuant to Ohio Adm. Code 123:1-33-12(F). Otherwise, appellant had to use any vacation, personal or sick leave that she accrued to obtain compensation for the hours she did not work. See R.C. 124.13(B);124.382(B); and 124.386(A).
 {¶ 33} Accordingly, we conclude that the trial court did not abuse its discretion by affirming appellee's decision to deny appellant disability benefits on her October 11, 2002 claim. As such, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Petree and McGrath, JJ., concur.