OHIO STATE BOARD OF PHARMACY, APPELLEE, *v.* FRANTZ ET AL., APPELLANTS.

[Cite as Ohio State Bd. of Pharmacy *v.* Frantz (1990), 51 Ohio St. 3d 143.]

(No. 89-339—Submitted February 13, 1990—Decided May 30, 1990.)

144

Anthony J. Celebrezze, Jr., attorney general, Steven P. Dlott and Lauren Ross, for appellee.

Emens, Hurd, Kegler & Ritter, William J. Brown, R. Kevin Kerns and Gene W. Holliker, for appellants.

MOYER, C.J. Defendants-appellants first contend that R.C. 119.09 requires the State Board of Pharmacy to issue subpoenas for depositions of witnesses when a party to an adjudication hearing requests a deposition.

The relevant portion of R.C. 119.09 provides:

"For the *purpose* of conducting any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency *may* require the *attendance of such witnesses* and the *production of such books, records, and papers* as it desires, and it *may* take the *depositions* of witnesses residing within or without the state in the same manner as is prescribed by law for the taking of depositions in civil actions in the court of common pleas, *and for that purpose* the agency may, and upon the request of any party receiving notice of said hearing as required by section 119.07 of the Revised Code, shall, issue a *subpoena for any witness or a subpoena duces tecum* to compel the production of any books, records, or papers, directed to the sheriff of the county where such witness resides or is found, which shall be served and returned in the same manner as a subpoena in a criminal case is served and returned. * * *" (Emphasis added.)

Defendants contend that the sec-

ond use of the word "purpose" in R.C. 119.09 refers to the taking of depositions and not to the conduct of an adjudication hearing.

In construing the above provision of R.C. 119.09, we are required to look to the statute itself to determine the intent of the General Assembly, and if such intent is clearly expressed therein, the statute may not be enlarged or abridged. *State, ex rel. City Iron Works, Inc.,* v. *Indus. Comm.* (1977), 52 Ohio St. 2d 1, 4, 6 O.O. 3d 37, 38, 368 N.E. 2d 291, 293. R.C. 119.09 is free from ambiguity and is not subject to judicial modification under the guise of interpretation. *Ohio Motor Vehicle Dealers Bd.* v. *Remlinger* (1983), 8 Ohio St. 3d 26, 8 OBR 337, 457 N.E. 2d 309.

The purpose of the portion of R.C. 119.09 in issue as stated therein is to empower an agency in its conduct of an adjudication hearing to require, if it desires, the attendance of witnesses, production of books, records and papers and the deposition of witnesses. And for the same purpose, the agency is required to issue subpoenas for witnesses or subpoenas *duces tecum* for the production of books, records or papers at the request of any party who is notified of the hearing pursuant to R.C. 119.07.

The General Assembly's use of the word "purpose" twice in the same paragraph is presumed to bear the same meaning. The second use of the word "purpose" in the mandatory portion of R.C. 119.09 refers to the first use, which gives the agency certain powers when an adjudication hearing is held. See *Schuholz* v. *Walker* (1924), 111 Ohio St. 308, 325, 145 N.E. 537, 542. The mandatory language pertains to securing attendance of witnesses and the production of books, records or papers at the request of a party for the purpose of conducting an adjudication

hearing. It does not require a board to order the taking of prehearing discovery depositions by a party to an adjudication hearing.

Defendants' contention would require us to impermissibly extend the statute to facts not before us. *Connell* v. *Bailey* (1955), 163 Ohio St. 50, 58, 56 O.O. 50, 53, 125 N.E. 2d 323, 327. See, also, *Scott* v. *Dept. of Comm. & Community Affairs* (1981), 84 Ill. 2d 42, 48 Ill. Dec. 560, 416 N.E. 2d 1082. Furthermore, defendants have not shown that they suffered any prejudice as a result of their inability to conduct prehearing discovery depositions.

We next consider whether the board is estopped from revoking Frantz's license and terminating defendant Medicine Shoppe's terminal distributor license, because it continued to renew the license for several years after having knowledge of the violations upon which the revocations were based.

The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or claim made in good faith and should not be used to uphold crime, fraud, or injustice. *Heckler* v. *Community Health Services* (1984), 467 U.S. 51, 59; *Lex Mayers Chevrolet Co.* v. *Buckeye Finance Co.* (1958), 107 Ohio App. 235, 237, 8 O.O. 2d 171, 173, 153 N.E. 2d 454, 456, affirmed (1959), 169 Ohio St. 181, 8 O.O. 2d 154, 158 N.E. 2d 360. The party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading. *Heckler, supra,* at 59.

It is well-settled that, as a general

rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function. *Sekerak* v. *Fairhill Mental Health Ctr.* (1986), 25 Ohio St. 3d 38, 39, 25 OBR 64, 65, 495 N.E. 2d 14, 15; see, also, *Besl Corp.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 146, 150, 74 O.O. 2d 262, 265, 341 N.E. 2d 835, 838.

Defendants argue that manifest injustice will result from revocations of their licenses because they spent money improving their pharmacy business after the board became aware of the violations. In essence, they contend that had the board initiated the disciplinary actions much sooner than it did, they would not have expended their resources improving their business.

The board cannot be estopped from its duty to protect the public welfare because it did not bring a disciplinary action as expeditiously as possible. See *Sekerak, supra,* at 39, 25 OBR at 65, 495 N.E. 2d at 15; *State, ex rel. Cartwright,* v. *Dunbar* (Okla. 1980), 618 P. 2d 900, 911. If a government agency is not permitted to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of all citizens in obedience to the rule of law is undermined. *Heckler, supra,* at 60. To hold otherwise would be to grant defendants a right to violate the law. See *Thagard* v. *Brock* (1968), 282 Ala. 262, 210 So. 2d 821.

Finally, defendants contend that the board is barred by the doctrine of laches from revoking the licenses.

We note *ab initio* that there is no time fixed by the statutes in question for bringing the disciplinary actions against defendants. Thus, the question is whether bringing the actions more than six years after the investigation was initiated is barred by the equitable doctrine of laches.

It is well-settled that in the absence of a statute to the contrary, laches is generally no defense to a suit by the government to enforce a public right or protect a public interest. *Ohio Dept. of Transp.* v. *Sullivan* (1988), 38 Ohio St. 3d 137, 139, 527 N.E. 2d 798, 799; *Heckler, supra,* at 67 (Rehnquist, J., concurring in judgment); see, also, *Immigration & Naturalization Service* v. *Miranda* (1982), 459 U.S. 14. The principle that laches is not imputable to the government is based upon the public policy in enforcement of the law and protection of the public interest. *Lee* v. *Sturges* (1889), 46 Ohio St. 153, 176, 19 N.E. 560, 571; *Ackerman* v. *Tri-City Geriatric & Health Care, Inc.* (1978), 55 Ohio St. 2d 51, 54, 9 O.O. 3d 62, 64, 378 N.E. 2d 145, 147, fn. 3. To impute laches to the government would be to erroneously impede it in the exercise of its duty to enforce the law and protect the public interest. We therefore reject the defendants' arguments.

For the foregoing reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.