OPINION
{¶ 1} This is an appeal from an order of the domestic relations division of the court of common pleas expunging a child support arrearage and enjoining further efforts to collect an arrearage owed.
 {¶ 2} Eddie and Carolyn Watson married in 1960. Three children were born of the marriage. Eddie[1] and Carolyn divorced in 1966. Carolyn was awarded custody of their three minor children. Eddie was ordered to pay forty dollars per week in child support for all three.
 {¶ 3} Eddie was drafted into the military service shortly after the divorce. He served three years. Soon after he was discharged, Eddie moved to Texas and never returned to Ohio. He maintained no contact with Carolyn or their children. Eddie eventually remarried, and he and his current wife continue to reside in Texas.
{para; 4} It is undisputed that Eddie made no payments in discharge of his child support obligation after his divorce from Carolyn. Neither did Carolyn seek to locate Eddie or otherwise attempt to enforce her right to child support, until 2004. That year, Carolyn learned that the Clark County Child Support Enforcement Agency ("CSEA") is available to assist child support obligees. Acting on that knowledge, Carolyn asked CSEA to assist her in collecting the support monies Eddie owed her.
 {¶ 5} The record is unclear as to what transpired next, but it appears that CSEA made an administrative determination of what Eddie owes and, after locating him, notified Eddie that he must make periodic payments on the obligation. It is also unclear whether Eddie sought a redetermination from CSEA. However, when CSEA obtained several payments from Eddie's employer by way of wage withholding, Eddie obtained counsel to represent him.
 {¶ 6} Eddie's attorney filed an application in the domestic relations division of the court of common pleas, asking for an ex parte order to require CSEA to escrow the monies it had collected through wage withholding and asking the court to find that no arrearage exists or, if one does, that CSEA is barred by the doctrine of laches from further collection efforts. The court granted the ex parte relief sought and the motion was referred to a magistrate for a hearing and decision.
 {¶ 7} Eddie offered several grounds in support of the further relief his motion sought: that the arrearage calculated by CSEA was inaccurate; that Carolyn had failed to keep contact with CSEA; and, that the lack of records ordinarily maintained by CSEA prevented an accurate determination of an arrearage amount that might be collected. It was this last ground that Eddie largely relied upon in prosecuting his motion.
 {¶ 8} Eddie testified that he had paid no monies to Carolyn in discharge of his child support obligation after they were divorced in 1966, thirty-eight years earlier. He testified that monies had been taken from his military pay by allotment and sent to Carolyn during his three years of military service, but he offered no other evidence to prove that or show how much Carolyn might have been paid. Eddie further testified that in more recent years Federal tax refunds he was due from the Internal Revenue Service had been intercepted by the State of Ohio, which eventually told him that the underlying obligation he owed the state had been paid in full. He conceded, however, that it did not extinguish the support arrearage he owes Carolyn. (T. 878-8).
 {¶ 9} The source and reason for the IRS tax intercepts was financial assistance Carolyn received from the State of Ohio for approximately one year while in nurse's training at Clark State Community College. It appears that CSEA undertook the intercepts and over time obtained $8,896.00 through that process, which it remitted to the State of Ohio. (T. 47). CSEA later destroyed its contemporaneous record of the monies it received because CSEA had classified the case as closed or inactive due to the lack of child support payments.
 {¶ 10} The magistrate found that "there is no possible way to know how much (Eddie) owes in back child support," explaining that Carolyn's "delay in asserting her right has caused CSEA's records to be destroyed and thereby destroyed her chances of recovering what is due." (Decision, p. 2). The magistrate concluded that Carolyn's right to any arrearage was therefore barred by laches. The magistrate ordered Eddie's arrearage "reduced to zero" and the monies escrowed returned to him. The magistrate further ordered CSEA to cease all enforcement efforts. The court entered an interim order pursuant to Civ.R. 53(E)(4)(c), adopting the magistrate's decision.
 {¶ 11} CSEA filed a timely objection on Carolyn's behalf. The motion was stated in general terms of "manifest weight" only, pending filing of a transcript of the proceedings before the magistrate. A transcript was filed, but no more specific objections were presented. The trial court, stating it had performed a full de novo review, overruled the objection. CSEA filed a timely notice of appeal on Carolyn's behalf.
ASSIGNMENT OF ERROR
 {¶ 12} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT EDDIE WATSON'S MOTION TO BAR THE CLARK COUNTY CHILD SUPPORT AGENCY FROM COLLECTING THE CHILD SUPPORT ARREARAGE ACCRUED BY MR. WATSON PURSUANT TO THE DOCTRINE OF LACHES."
 {¶ 13} As a preliminary matter, we remind counsel for Defendant-Appellee of the requirements of App.R. 9(A) governing the form of briefs, in particular its requirement that the text of briefs be double-spaced. Reference should also be made to App.R. 16(A) and (B) governing the content and structure of briefs.
 {¶ 14} Laches is an omission to assert a right for an unreasonable period of time, without explanation, which results in material prejudice to the adverse party in litigation. Stateex rel. Wean v. Industrial Commission (1993), 66 Ohio St 3d 272.
 {¶ 15} As a general rule, laches cannot be asserted against either the state generally, Ohio State Bd. Of Pharmacy v.Frantz (1990), 51 Ohio St.3d 143, or the CSEA while attempting to recover payment for unpaid child support. State ex rel.Scioto Cty. V. Gardner (1996), 113 Ohio App.3d 46. However, an exception has been found when CSEA's delay has caused CSEA to destroy its records of what the obligor owes, and the obligor has likewise destroyed his records showing what he claims he paid in child support. Stump v. Stump (Jan. 24, 2000), Butler App. No. CA99-03-064.
 {¶ 16} In the present case, unlike Stump, any delay in enforcing her rights is chargeable to Carolyn instead of CSEA, which is merely acting on her behalf. Carolyn did offer an explanation for why she waited for so long to enforce her right. She testified that she had consulted an attorney earlier on, but because she lacked the resources to prosecute her claim and believed Eddie was dead, she took no further action until 2004, when she learned CSEA was available to assist her. (T. 10).
 {¶ 17} Carolyn testified that her belief that Eddie was dead was founded on statements made by members of his family. The magistrate properly rejected Eddie's objection that the evidence was hearsay, allowing it not to prove the truth of the statement, which was obviously untrue, but as proof that the statements were made to Carolyn. (T. 20-21). Even so, in reaching his ultimate conclusion on Eddie's laches claim, the magistrate made no finding with respect to whether Carolyn's delay was without explanation. State ex rel. Wean. Rather, the magistrate focused entirely on the prejudice prong of the laches test, finding that Eddie was materially prejudiced in defending against Carolyn's claim by the lack of CSEA records.
 {¶ 18} The case file that had been maintained by CSEA, which ordinarily would show what Eddie paid and what CSEA remitted to Carolyn, was destroyed by CSEA in 2003 due to inactivity in the case when a new computer record was established by CSEA. Eddie argues that the inactivity is chargeable to Carolyn because she failed to prosecute her right to child support. However, Carolyn's right was not merely statutory and inchoate. It had been established by court order. It is disingenuous to contend that Eddie should be relieved of an affirmative obligation imposed on him by prior court order because, when he failed to perform it, the beneficiary didn't charge him with contempt of the court's order.
 {¶ 19} Unlike Stump, in the present case Eddie admitted that he never made a single payment on his child support obligation, either to Carolyn directly or through CSEA or any predecessor agency charged to collect child support. Therefore, any question of what Eddie himself paid is immaterial, as is any destruction of the records showing what he might have paid but didn't.
 {¶ 20} In the first notification of an arrearage dated April 7, 2004, that it sent to Eddie, CSEA stated that the amount of the arrearage is in excess of $80,000. A second letter, dated April 16, 2004, reduced the figure to $72,000. At the hearing, CSEA's auditor testified that the figures were clearly incorrect, having failed to take account of the emancipation of the three children. (T. 32). Recalculating the unpaid obligation through the date in 1983 when the youngest child was emancipated, the auditor calculated that the arrearage Eddie owes Carolyn amounts to $19,016.00. (T. 56). Eddie presented two contentions against that conclusion. First, Eddie argues that the amount of arrearage fails to account for the successive emancipations of the older two children prior to 1983, when the youngest was emancipated. However, the forty dollars per week child support obligation the court imposed was not per capita, but in gross. Eddie sought no reduction. Therefore, prior emancipations are irrelevant, and Eddie owed child support at the rate of forty dollars per week for the full period from the divorce until the youngest child was emancipated. When that occurred may be determined.
 {¶ 21} Second, Eddie argues that CSEA's destruction of its records materially prejudices him because it prevents an accurate determination of how much he owes. However, the lack of a record cannot prevent a determination of what he paid in compliance with the court's child support order, because he admits he paid nothing on the obligation, and the obligation is evident from the court's 1966 child support order. At most, CSEA's destruction of its record could only prejudice his ability to show the credits against his obligation to which Eddie claims he is entitled.
 {¶ 22} Eddie testified that payments were made by military allotment while he was in the service. However, he did not say how much was paid or offer any other proof of the fact. Most importantly, for purposes of laches, Eddie did not make any claim that evidence of what he did pay through military allotment is now unavailable.
 {¶ 23} Eddie's claim that evidence is unavailable relates to the matter of tax refunds due him that CSEA intercepted from the IRS. CSEA's contemporaneous records showing what it intercepted have been destroyed, and Eddie's wife testified that IRS cannot provide copies of tax returns and/or intercept notifications for the earlier years in which refunds were intercepted by CSEA from the IRS. However, Eddie is not materially prejudiced in showing the amounts intercepted by CSEA if other, reliable records are available to show that, and they are.
 {¶ 24} The CSEA auditor testified that when CSEA destroyed its case file it transferred the record of payments to a new computer record information system showing the amounts it had intercepted from the IRS beginning in 1990. For any years prior to that, CSEA's "ADC card" showed remittances to the State of Ohio from amounts CSEA had intercepted from tax refunds Eddie was owed. (T. 51-53). Because remittances are evidence of what was intercepted, a determination of what was intercepted prior to 1990 can be made from the ADC card.
 {¶ 25} Eddie's wife testified that she and Eddie filed joint Federal Income Tax returns for the years since 1982, in which intercepts were made. (T. 72). She was able to confirm some of the post-1990 intercepts shown in CSEA's new computer record. (T. 76), but none of those prior to 1990 and beginning in 1985, as shown on CSEA's ADC card. She was unable to contest those, and speculated that some may have occurred a year or two before, (T. 78), but had no firm recollection of that. The CSEA auditor conceded on cross-examination that it's "possible" that an intercept was made that was not reflected on the ADC card, but that was likewise speculative. (T. 24). His firm testimony was that any intercepts prior to 1990 are reflected on the ADC card. (T. 53).
 {¶ 26} The records maintained by CSEA reasonably show all IRS tax refund monies that were intercepted from Eddie's Federal Income Tax refunds beginning in 1985 and applied toward his child support obligation. If Eddie has evidence that contradicts CSEA's, he may offer it. The court can then decide what evidence to credit.
 {¶ 27} Eddie is not materially prejudiced merely because he has no records to contest those maintained by CSEA. He might be if the CSEA records are an inadequate basis to determine what he owes. They are not, at least with respect to tax refunds intercepted and applied against his obligation, which was the basis for the magistrate's finding that the trial court adopted that "there is no possible way to know how much (Eddie) owes in back child support." In view of Eddie's admission that he otherwise paid nothing, except for some unspecified military allotments, the trial court exceeded its discretion when it overruled Carolyn's objection to the magistrate's decision.
 {¶ 28} Our holding is limited to the trial court's finding concerning credits to which Eddie is entitled because of IRS tax refunds intercepted and applied against his obligation, on the record before the court. On remand, the court may hear additional evidence on that matter, as well as on any other matters relevant to prove Eddie's laches claim. In applying the doctrine, the court must find that, in addition to any material prejudice Eddie suffered, Carolyn lacks a reasonable explanation for failing to act earlier to enforce her right.
 {¶ 29} The assignment of error is sustained. The case will be remanded for further proceedings consistent with this opinion.
Donovan, J., concurs.
Fain, J., concurs in judgment only.
[1] For clarity and convenience, the parties are identified by their first names.