HORTMAN ET AL., APPELLEES, *v.* CITY OF MIAMISBURG ET AL., APPELLANTS.

[Cite as *Hortman v. Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251.]

(Nos. 2005–1351 and 2005–1361—Submitted March 15, 2006—Decided August 30, 2006.)

LUNDBERG STRATTON, J.

{¶ 1} Today this court must decide whether the doctrines of equitable estoppel and promissory estoppel are applicable against a political subdivision when the political subdivision is engaged in the performance of a government function. For the reasons that follow, we hold that they are not, and we reverse the judgment of the court of appeals and enter judgment for the city of Miamisburg.

## I. Facts

{¶ 2} This dispute arose from a road-improvement project by the appellant, the city of Miamisburg, involving Maue Road and a portion of South Linden Avenue at the point where it intersected with Maue. Appellees, Douglas and David Hortman ("Hortmans"), are the co-owners of residential property located at 502 South Linden Avenue in Miamisburg, Ohio, at the corner of South Linden Avenue and Maue Road. Donald Hortman, father of the Hortmans, owned the property from 1972 until his death on February 1, 2001. The Hortmans allege that they suffered damage to both real and personal property during the road-improvement project. The real-property damages at issue here include the destruction of an elm tree and other trees on the Hortmans' property.

{¶ 3} Miamisburg held public meetings in July and October 2000 regarding the Maue Road improvement project. Donald Hortman attended those meetings with his sons. The Hortmans claimed that at those meetings, and again before the work started, the Miamisburg City Engineer, Robert Stanley, and a Miamisburg City Councilman, Robert Faulkner, promised them that certain trees on the property at 502 South Linden Avenue would not be touched or destroyed as a result of the project.

{¶ 4} After Donald Hortman's death shortly before the road-improvement project was to begin, the Hortmans inherited the property from their father, and Douglas and his family moved into the house in approximately March 2001. On March 14, 2001, Douglas Hortman signed a work-permission agreement that authorized Miamisburg "and its authorized employees, agents or contractors to enter [the Hortmans' property] for the purpose of performing all work and construction necessary to adjust the ground elevation and driveway to meet the proposed line and grade, any water service work necessary, and tree and brush removal, in accordance with the plans and specifications prepared for the Maue Road Improvement Project." Miamisburg contracted with SK Construction as general contractor for the road-improvement project.

{¶ 5} During the excavation, the root system of the elm tree was exposed, so the elm had to be removed because it would have been unstable during high winds. Other trees were removed as well. It appears that the trees might have

been located within Miamisburg's permanent right-of-way.[1]  Miamisburg paid to relandscape the property affected by the road-improvement project.

{¶ 6} The Hortmans filed suit against Miamisburg on September 25, 2002, alleging negligence, conversion, and promissory estoppel.  On July 21, 2004, the Montgomery County Court of Common Pleas granted summary judgment to Miamisburg on all claims.  The trial court held that the city was immune from the Hortmans' action for damages caused by Miamisburg's alleged negligence in making the improvements.  In addition, the trial court held that the Hortmans' claim for conversion was barred because the trees in question were in the city's permanent right-of-way.  Finally, the court held that the Hortmans' claim of promissory estoppel failed as well because promissory estoppel cannot be applied against a political subdivision when the alleged acts fall within a governmental function.

{¶ 7} The Montgomery County Court of Appeals affirmed the trial court's grant of summary judgment in favor of Miamisburg regarding negligence and conversion.  However, the appellate court reversed the trial court's judgment regarding promissory estoppel as to Miamisburg.  The court of appeals certified a conflict on the question: "Is the doctrine of promissory estoppel applicable against a political subdivision of the state of Ohio when the political subdivision is engaged in a governmental function?"  The city also filed a discretionary appeal in this court.

{¶ 8} We accepted jurisdiction over the city's discretionary appeal and also determined that a conflict exists.  We consolidated the two cases, and the consolidated case is now before this court for a determination on the merits.

## II.  Political Subdivision Tort Liability Act

{¶ 9} In *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610, this court noted that the Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property.

{¶ 10} "First, R.C. 2744.02(A) sets forth the general rule of immunity, that political subdivisions are not liable in damages for the personal injuries or death of a person.  R.C. 2744.02(A)(1) provides:

{¶ 11} " 'For purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. *Except as provided in division (B) of this section,* a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly

---

1.  Because this case was decided on summary judgment, the record is not well developed and the exact location of the trees in dispute is unclear.

caused by any act or omission of the political subdivision * * * in connection with a governmental or proprietary function.'  (Emphasis added.) * * *

{¶ 12} "The immunity afforded a political subdivision in R.C. 2744.02(A)(1) is not absolute, but ·is, by its express terms, subject to the five exceptions to immunity listed in former R.C. 2744.02(B).  * * * Thus, once immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply.  * * * Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that any of the defenses contained in R.C. 2744.03 applies." *Cater,* 83 Ohio St.3d at 28, 697 N.E.2d 610.

{¶ 13} The court of appeals affirmed the trial court's holding that Miamisburg was immune from the Hortmans' claims of negligence and conversion under the Political Subdivision Tort Liability Act.  The Hortmans did not appeal that holding.  Thus, our sole focus is whether the court of appeals erred in concluding that promissory estoppel may be applied against a political subdivision that would otherwise be immune from a civil action in connection with a governmental function.

### III.  Promissory Estoppel

{¶ 14} The trial court granted summary judgment to the city on the claim of promissory estoppel on the ground that promissory estoppel cannot be applied against a political subdivision when it is engaged in a governmental function, such as the Maue Road improvement project.  The court of appeals reversed the judgment of the trial court, holding that the trial court incorrectly concluded that the promissory-estoppel claim was precluded merely because the city was performing a governmental function.

{¶ 15} The court of appeals relied primarily on *State v. First, Inc.* (Apr. 3, 1990), 2nd Dist. No. 11486, 1990 WL 40668, an appellate decision authored by the Montgomery County Court of Appeals.  In *State v. First, Inc.,* the Second District held that "while promissory estoppel is generally not available against the State in the performance of a governmental function, it is available in a contractual context where the subject matter of the contract is within the authority of the person acting on behalf of the State."  Id. at *5.

{¶ 16} In 1991, this court accepted *First, Inc.* as a discretionary appeal and later dismissed it, sua sponte, as having been improvidently accepted.  In dismissing the case, we held, "The court orders that the court of appeals' opinion not be published in the Ohio Official Reports, and that it *may not be cited as authority except by the parties inter se.*"  (Emphasis added.)  *State v. First, Inc.* (1991), 59 Ohio St.3d 603, 571 N.E.2d 436.  Despite this court's order to the contrary, the appellate court in this case not only cited *First, Inc.* as authority

but relied on it as its primary authority in concluding that the Hortmans' promissory-estoppel claim was not subject to summary judgment. Today we reaffirm our holding in *State v. First, Inc.*, that the court of appeals' decision in that case has no precedential value, and we hold that the doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function.

### IV. Equitable Estoppel and Promissory Estoppel Distinguished

{¶ 17} Although the certified question asks only whether promissory estoppel may be applied against a political subdivision while it is engaged in a governmental function, the discretionary appeal asks the same question with regard to equitable estoppel, so we examine the differences between the two doctrines.

{¶ 18} The doctrines of equitable and promissory estoppel are related, but there are distinctions. Because of the close relationship of the two doctrines, many courts have confused them, often using them interchangeably. We turn to Williston on Contracts and the Restatement of Contracts to clarify the doctrines.

{¶ 19} Williston defines equitable estoppel in the following manner:

{¶ 20} "It is generally held that a representation of past or existing fact made to a party who relies upon it reasonably may not thereafter be denied by the party making the representation if permitting the denial would result in injury or damage to the party who so relies. The party making the representation is denied, by virtue of equitable estoppel, the right to plead or prove the existence of facts contrary to his representations. As the United States Supreme Court has pointed out, one 'who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.' [*Dickerson v. Colgrove* (1879), 100 U.S. 578, 25 L.Ed. 618.] The doctrine preventing the denial is known as equitable estoppel or estoppel in pais." (Footnotes omitted.) 4 R. Lord, Williston on Contracts (4th Ed.1992) 28–31, Section 8:3.

{¶ 21} "It was against the backdrop of equitable estoppel * * * that promissory estoppel developed. In the typical equitable estoppel case, the defendant had represented an existing or past fact to the plaintiff, who reasonably and in ignorance of the truth relied upon the representation to his detriment. In a number of cases, however, the representation was not as to a fact but as to *an intention;* where the party making the representation asserted that he would do or refrain from doing something *in the future* he made a promise, though it might also be considered a representation of his intention. If the promise was gratuitous, not backed by consideration, the promisee would have no remedy. No equitable estoppel could exist since the promisee had not relied upon a

statement of fact; no action for breach of contract could be brought since the promise was gratuitous. * * *

{¶ 22} "Nevertheless, and despite the common-law rules, there existed numerous cases, both before and after the promulgation of the Restatements, which had held individuals liable on their promises despite the absence of consideration. In such cases, the courts have applied the principle of estoppel in effect to form a contract, when the promisee suffered detriment in reliance on a gratuitous promise. Because the promisee in such a case is relying on a promise and not on a misstatement of fact, the appropriate term to describe the doctrine is 'promissory estoppel,' to distinguish it from its ancestor, equitable estoppel." (Footnotes omitted and emphasis added.) 4 Williston, supra, 38–46, Section 8:4.

{¶ 23} Promissory estoppel has been defined by the Restatement of Contracts, 2d as "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement of the Law 2d, Contracts (1981) 242, Section 90.

{¶ 24} The clearest definition of promissory estoppel is found in Black's Law Dictionary. " 'The doctrine of promissory estoppel is equitable in origin and nature and arose to provide a remedy through the enforcement of a gratuitous promise. Promissory is distinct from equitable estoppel in that the representation at issue is promissory rather than a representation of fact. "Promissory estoppel and estoppel by conduct are two entirely distinct theories. The latter does not require a promise." ' Ann Taylor Schwing, *California Affirmative Defenses* § 34:16, at 35 (2d ed.1996) (quoting *Division of Labor Law Enforcement v. Transpacific Transp. Co.*, 88 Cal.App.3d 823, 829, 152 Cal.Rptr. 98 (1979))." Black's Law Dictionary (8th Ed.2004) 591. Thus, the key distinction between the two doctrines is whether the estoppel arises from a promise and not a misstatement of fact.

{¶ 25} This court has held, "It is well-settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145–146, 555 N.E.2d 630. See, also, *Sekerak v. Fairhill Mental Health Ctr.* (1986), 25 Ohio St.3d 38, 25 OBR 64, 495 N.E.2d 14, and *Besl Corp. v. Pub. Util. Comm.* (1976), 45 Ohio St.2d 146, 150, 74 O.O.2d 262, 341 N.E.2d 835. The Hortmans claim that because this court has inserted the words "generally" or "as a general rule" when discussing the principles of estoppel, this case may be the exception to that general rule. We disagree and hold that the doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function.

*Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 31 OBR 584, 511 N.E.2d 112; *State ex rel. Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 17 OBR 64, 477 N.E.2d 623.

## V.  Conclusion

{¶ 26} Accordingly, we reverse the judgment of the court of appeals, answer the certified question in the negative, and enter judgment for the city of Miamisburg.

Judgment reversed.

MOYER, C.J., RESNICK, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 27} In their claim for damages based upon promissory estoppel, the Hortmans bring a cause of action sounding in contract.  In bringing a cause of action for promissory estoppel, a plaintiff seeks the enforcement of a promise. *Shampton v. Springboro,* 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶ 33. The majority, in quoting 4 R. Lord, Williston on Contracts (4th Ed.1992) 38–46, Section 8:4, writes that "the courts have applied the principle of [promissory] estoppel in effect to form a contract."  R.C. 2744.09(A) specifically provides that political subdivisions are not immune under the Political Subdivision Tort Liability Act, R.C. Chapter 2744, from actions seeking damages "for contractual liability."

{¶ 28} In *Shampton,* this court seemed to assume that an action for promissory estoppel is available against a political subdivision.  The analysis in *Shampton* did not center on whether the political subdivision was susceptible to a claim of promissory estoppel, which would have been dispositive, but instead concentrated on whether the particular official in the case had the authority to make a promise on behalf of the political subdivision.  That should be the focus of the analysis in this case, too, upon remand.

{¶ 29} The majority thoroughly sets forth in the body of its opinion the clear differences between equitable estoppel and promissory estoppel.  However, in repeating the statement that "as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function," the majority conflates equitable estoppel and promissory estoppel.  The cases it cites in support of the general rule involve only claims of *equitable* estoppel. Those cases typically fall into a couple of categories—the acquiescing agency and the confused clerk.  In acquiescing-agency cases, like *Ohio State Bd. of Pharma-*

*cy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630, and *Besl Corp. v. Pub. Util. Comm.* (1976), 45 Ohio St.2d 146, 74 O.O.2d 262, 341 N.E.2d 835, this court has held that a state agency may not be estopped from enforcing rules that it had loosely enforced in the past. In confused-clerk cases, like *Sekerak v. Fairhill Mental Health Ctr.* (1986), 25 Ohio St.3d 38, 25 OBR 64, 495 N.E.2d 14, and *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 31 OBR 584, 511 N.E.2d 112, this court has held that the government is not estopped if erroneous filing-deadline information is given to parties by governmental functionaries. These are all mistake-of-fact cases. The Hortmans, however, are not pursuing Miamisburg because they were given incorrect information, but because Miamisburg allegedly failed to live up to a promise.

{¶ 30} I have long written that R.C. Chapter 2744, to the extent that it grants immunity to political subdivisions for certain acts, is unconstitutional. *Garrett v. Sandusky* (1994), 68 Ohio St.3d 139, 141–144, 624 N.E.2d 704 (Pfeifer, J., concurring). But the majority in this case extends the coverage of the Political Subdivision Tort Liability Act beyond its self-created boundaries. It is one thing to hold the state harmless for the mistakes of its employees; it is quite another to hold that the state need not abide by its promises.

---

Patrick J. Conboy II, for appellees.

Surdyk, Dowd & Turner Co., L.P.A., Robert J. Surdyk, and Kevin A. Lantz, for appellant.