[Cite as *Inwood Village, Ltd. v. Cincinnati*, 2011-Ohio-6632.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| INWOOD VILLAGE, LTD., | : | APPEAL NO. C-110117 |
| | | TRIAL NO. A-1005768 |
| and | : | |
| DORAIN DEVELOPMENT VI, LTD., | : | *O P I N I O N.* |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: December 23, 2011

*Charles G. Atkins* and *Gregory A. Keyser,* for Plaintiffs-Appellees,

*John P. Curp*, City Solicitor, *Richard Ganulin*, and *Paula Boggs Muething*, Assistant City Solicitors, for Defendant-Appellant.

Note: We have removed this case from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}     Defendant-appellant, the city of Cincinnati, Ohio, appeals from the trial court's entry granting in part and denying in part its motion to dismiss the amended complaint filed by the plaintiffs-appellees, Inwood Village, Ltd., and Dorian Development VI, Ltd., the developers of the Inwood Village project located in the Mt. Auburn neighborhood of Cincinnati.  When the city failed to provide the long-anticipated funding for the project, the developers brought this action seeking money damages for breach of contract, breach of implied-in-fact contract, and for promissory estoppel.  The city moved under Civ.R. 12(B)(6) to dismiss the claims.  The trial court entered judgment in the city's favor on the developers' contract claims, but denied the city's motion as to the promissory-estoppel claims.  Because the city had been engaged in the governmental function of urban renewal with the goal of the elimination of slum conditions, it was immune under R.C. Chapter 2744 from the developers' promissory-estoppel claims and the trial court erred in ruling otherwise.

## I.  Facts

{¶2}     The city had sought developers to ameliorate the blighted and crime-ridden Mt. Auburn neighborhood.  Following three years of negotiations, in March 2005, the developers and the city signed a funding letter for the Inwood Village development project.  The letter, signed by the developers and the city's director of community development, provided that the director would recommend a $1,500,000 forgivable loan to fund the project.  The director's recommendation to the city manager, who retained the final authority to bind the city, was contingent upon the accomplishment of 12 conditions, including,  city council approval, negotiation of a development agreement, completed plans, specifications and cost estimates acceptable to the city, and updated evidence of

private financing commitments. In June 2005, upon the city manager's recommendation, the city council adopted an ordinance incorporating a funding plan. The plan contained all of the detailed mutual obligations to be accomplished in furtherance of the urban renewal project.

{¶3} Though the developers struggled to meet the conditions of the funding plan, they secured construction loan commitments from a major bank to supplement their own investment of over $2,000,000. But the developers alleged that the city began to delay accomplishment of its development tasks such as infrastructure improvements. The cost of the project continued to rise.

{¶4} But on May 20, 2010, the city manager refused to go forward and fund the much-delayed project. The developers alleged that representatives of The Christ Hospital had "destroyed [the] development's imminent funding" to reserve the property for its own future expansion in the Mt. Auburn neighborhood.

{¶5} The developers brought this action against the city alone seeking over $10,000,000 in monetary damages for breach of contract, breach of implied-in-fact contract, and for promissory estoppel. The city moved under Civ.R. 12(B)(6) to dismiss the claims because, absent final city manager approval of the development, no binding contract existed between the parties, and because it was immune from the developers' promissory-estoppel claims. On February 17, 2011, the trial court entered judgment in the city's favor on the developers' contract claims. The trial court denied the city's motion as to the promissory-estoppel claims. The entry did not contain the court's express determination pursuant to Civ.R. 54(B) that there was no just reason for delay. This appeal followed.

## II. Appealing from an Order Denying Immunity

{¶6}     Because an appellate court's jurisdiction is limited to review of judgments or final orders, it must determine its own jurisdiction to proceed before reaching the merits of any appeal.  See *State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 544, 1997-Ohio-366, 684 N.E.2d 72.  R.C. 2744.02(C) permits a political subdivision to immediately appeal, in a multiple-claim action, a trial court's order that denies it the benefit of an alleged immunity from liability under R.C. Chapter 2744, even when the order makes no determination pursuant to Civ.R. 54(B).  See *Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, syllabus.  Since the city is appealing from an order denying it immunity, its appeal is taken from a final, appealable order, and we have jurisdiction to proceed.  See Section 3(B)(2), Article IV, Ohio Constitution; see, also, R.C. 2505.03(A).

{¶7}     We note that the developers also filed an appeal from that part of the trial court's entry dismissing their contract claims.  The developers, however, cannot benefit from the General Assembly's "express[ ] * * * determination with the enactment of R.C. 2744.02(C)" that an order denying a political subdivision immunity from liability is final and immediately appealable.  *Sullivan v. Anderson Twp.*, at ¶12. Since the developers' appeal was taken from an order disposing of "one or more but fewer than all of the claims" but lacking the trial court's Civ.R. 54(B) determination, we dismissed their appeal, numbered C-110125, on August 4, 2011.

## III. The Standard of Review

{¶8}     In ruling on a motion to dismiss made under Civ.R. 12(B)(6), the trial court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the nonmoving party.  See *Mitchell v. Lawson Milk Co.*

(1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. The court may dismiss a complaint under Civ.R. 12(B)(6) only when the plaintiff can prove no set of facts that would entitle it to relief. See *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 327 N.E.2d 753, syllabus. In reaching that determination, the court may not rely on evidence outside the pleadings, although it may consider materials that are incorporated into the complaint. See *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 1992-Ohio-73, 605 N.E.2d 378; see, also, *Mann v. The Cincinnati Enquirer*, 1st Dist. No. C-090747, 2010-Ohio-3963, ¶11. We review de novo the trial court's ruling on a motion to dismiss under Civ.R. 12(B)(6). See *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶5.

{¶9} In its single assignment of error, the city contends that it was entitled to judgment on the developers' remaining promissory-estoppel claims. Because it had been engaged in an urban-renewal project with the goal of the elimination of slum conditions, a governmental function under R.C. 2744.01(C)(2)(q), the city argues that it was immune from the developers' promissory-estoppel claims under the rule of *Hortman v. Miamisburg,* 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E. 2d 716, syllabus.

### IV. Sovereign Immunity

{¶10} The application of the doctrine of sovereign immunity can lead to harsh results, denying recovery to an injured plaintiff without regard to the political subdivision's culpability. See, e.g., *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 30, 442 N.E.2d 749. But the Ohio Supreme Court has long held that " '[t]he manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions.' " *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007-Ohio-

4839, 873 N.E.2d 878, ¶23, quoting *Wilson v. Stark Cty. Dept. of Human Serv.*, 70 Ohio St.3d 450, 453, 1994-Ohio-394, 639 N.E.2d 105.

{¶11} "To limit the exposure of political subdivisions to money damages, R.C. Chapter 2744 provides a three-tiered scheme that grants nearly absolute immunity to political subdivisions." *Engleman v. Cincinnati Bd. of Edn.* (June 22, 2001), 1st Dist. No. C-000597. The first tier of the scheme provides a general grant of immunity: "[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). The next tier of the analysis carves out certain exceptions to immunity listed in R.C. 2744.02(B). Finally, if any exception applies to impose liability, the third tier of the analysis focuses on whether any of the defenses contained in R.C. 2744.03 apply to reinstate immunity. See *Kenko Corp. v. Cincinnati*, 183 Ohio App.3d 583, 2009-Ohio-4189, 917 N.E.2d 888, ¶17.

### V. The City Was Engaged in a Governmental Function

{¶12} First, it is beyond cavil that the city, a municipal corporation, is specifically included in the statutory definition of a political subdivision. See R.C. 2744.01(F). The city next argues that its involvement in obtaining funding assistance for the Inwood Village development was a governmental function for which it was entitled to immunity. See R.C. 2744.02(A)(1).

{¶13} In *Kenko v. Cincinnati*, we denied the city immunity from a developer's claim to recover damages incurred in preparing a city-owned tract of land for the construction of a public right-of-way in a subdivision created by the

developer. We rejected the city's assertion that road construction in a private development was a governmental function. See id. at ¶32. We noted that road construction was not specifically identified in R.C. Chapter 2744 as a governmental function. See id. at ¶19. Where the statutory scheme did not expressly define a function as a governmental one, we concluded that the court must look to what it is that the political subdivision was "actually doing" when performing the function. *Kenko v. Cincinnati* at ¶27, quoting *Allied Erecting and Dismantling Co. v. Youngstown*, 151 Ohio App.3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶23.

{¶14} But unlike the function disputed in *Kenko*, the General Assembly has expressly defined "[u]rban renewal projects and the elimination of slum conditions" as governmental functions. R.C. 2744.01(C)(2)(q); see, also, *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606, ¶13. Relying on *Moore*, we have held that a public housing authority exercises a governmental function because it accomplishes "urban renewal projects and the elimination of slum conditions." See *Torrance v. Cincinnati Metro. Hous. Auth.*, 1st Dist. No. C-081292, 2010-Ohio-1330, ¶14 (citations omitted).

{¶15} Here the city was performing those functions. The developers' amended complaint described the Inwood Village project area as blighted, its "clustered row houses and adjacent street * * * riddled with crime and drug activity." A primary term of the funding commitment and funding plan included the provision of "$1,500,000 in direct project assistance to aid in the elimination of slum and blighting influences * * *." The draft statement of work and budget noted that funds were provided "to aid in the elimination of slum and blighting influences." Here, the city's acts were in furtherance

7

of an urban renewal project with the goal of the elimination of slum conditions. It was engaged in a governmental function under R.C. 2744.01(C)(2)(q).

### VI. Promissory-Estoppel Claims Barred

{¶16}    The city next argues that since it had been engaged in a governmental function, the developers' promissory-estoppel claims were barred under the rule of *Hortman v. Miamisburg*. In the syllabus paragraph, the supreme court clarified its earlier rulings and explained that "[t]he doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function."

{¶17}    The developers counter that their claim for damages based upon promissory estoppel was a "cause of action sounding in contract." *Hortman v. Miamisburg* at ¶27 (Pfeifer, J., dissenting); see, also, *Shampton v. Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E.2d 883, ¶33. Thus, under R.C. 2744.09(A), they assert that their claims for damages under contractual liability were exempted from the statutory-immunity scheme. They also contend that, unlike in *Hortman*, the city's promises had been legislatively authorized and thus fell outside the facts of that case. See *Hortman v. Miamisburg* at ¶28 (Pfeifer, J., dissenting).

{¶18}    Despite the developers' cogent argument that *Hortman* is "a factually narrow case which makes a sweeping pronouncement" precluding promissory-estoppel claims, we are constrained to follow it. In *Hortman*, the supreme court rejected the argument that because the court had employed the words "generally" or "as a general rule" in its previous discussions of the inapplicability of promissory estoppel, exceptions to the general rule could be found. See id. at ¶25. Instead, the

supreme court categorically declared that claims for promissory estoppel "are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." Id.

{¶19} Because the city had been engaged in an urban-renewal project with the goal of the elimination of slum conditions, governmental functions under R.C. 2744.01(C)(2)(q), it was immune from the developers' promissory-estoppel claims. The assignment of error is sustained.

## VII.   Conclusion

{¶20} Therefore, that portion of the trial court's entry denying the city immunity from liability under R.C. Chapter 2744 on the developers' promissory-estoppel claims is reversed. And the case is remanded to the trial court with instructions for it to enter judgment in favor of the city on those claims.

Judgment reversed and cause remanded.

HENDON, P.J., and FISCHER, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.