[Cite as *U.S. Bank Natl. Assn. v. Cincinnati*, 2019-Ohio-1866.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION, | : | APPEAL NOS. C-170526 |
| | | C-170536 |
| Plaintiff, | : | C-180093 |
| | | TRIAL NO. A-1603148 |
| vs. | : | |
| CITY OF CINCINNATI, | : | *O P I N I O N.* |
| Defendant/Cross-Claim Plaintiff-<br>Appellee, | : | |
| | : | |
| and | | |
| | : | |
| CBD INVESTMENTS LIMITED<br>PARTNERSHIP I, | : | |
| and | | |
| | : | |
| RSJJ INVESTMENTS LIMITED, | : | |
| Defendants/Cross-Claim<br>Defendants-Appellants, | : | |
| | : | |
| and | | |
| | : | |
| ROBERT A. GOERING, | : | |
| Defendant. | | |

Civil Appeals From:  Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  May 15, 2019

*Paula Boggs Muething*, City Solicitor, *Marion E. Haynes, III*, Chief Counsel, and *Kevin M. Tidd*, for Defendant/Cross-Claim Plaintiff-Appellee City of Cincinnati,

*Statman Harris & Eyrich LLC* and *William B. Fecher* for Defendants/Cross-Claim Defendants-Appellants,

*Keating Muething & Klekamp PLL* and *Joseph E. Lehner* for Plaintiff 435 Elm Investment LLC,

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Lawrence C. Baron*, Assistant Prosecuting Attorney, for Defendant Robert A. Goering.



**CROUSE, Judge.**

{¶1} Defendants/cross-claim defendants-appellants CBD Investments Limited Partnership I ("CBD LP") and RSJJ Investments Limited ("RSJJ") appeal from the trial court's grant of partial summary judgment, a writ of forcible entry and detainer, and a stay of execution conditioned on a supersedeas bond. For the reasons set forth below, we affirm the trial court's judgments.

### I. Facts and Procedure

{¶2} This appeal concerns real property located at 435 Elm Street in Cincinnati, Ohio, sometimes referred to as the "Convention Place Mall." The city of Cincinnati (the "city") owns both the real estate and the building at issue. CBD LP and RSJJ formerly leased the land and building from the city. CBD LP leased the top five floors of the building (the "Office Property"), and RSJJ leased the remainder of the building (the "Retail Property"). The leases were entered in 1983 and 1997, respectively. Ronald Goldschmidt is the principal of both CBD LP and RSJJ.

{¶3} On May 31, 3016, U.S. Bank National Association ("US Bank") filed a complaint against CBD LP, Goldschmidt, and CBD Investments, Inc., seeking to foreclose CBD LP's leasehold interest in the Office Property. The city and Hamilton County Treasurer Robert Goering were also joined as defendants in the action. The city subsequently asserted cross-claims against CBD LP, alleging that CBD LP was in default of its obligations under the office lease. The city sought a declaratory judgment terminating the office lease, a writ of forcible entry and detainer, and delinquent rent and payment obligations. The city also brought a separate action against RSJJ, alleging that RSJJ was in default of its obligations under the retail lease and seeking similar relief. The city's case against RSJJ was subsequently consolidated with its cross-claims against CBD LP.

3

{¶4} On November 8, 2016, the city moved for partial summary judgment as to the declaratory judgment and forcible-entry-and-detainer claims. CBD LP and RSJJ opposed the motion, arguing, among other things, that the city waived its rights under the leases by failing to enforce them for over 20 years. The trial court granted the city's motion for partial summary judgment on September 21, 2017. On September 25, 2017, the city sought and received an order of possession. CBD LP and RSJJ filed a notice of appeal the following day.

{¶5} On September 27, 2017, the trial court issued a writ of restitution and a writ of forcible entry and detainer ("the writs"). That same day, appellants filed a second notice of appeal and a motion to stay execution of the writs. The magistrate, having heard oral and written argument, issued an order granting appellants' motion to stay execution. The stay of execution was conditioned on appellants posting a bond in the amount of $1,102,866.86. Following the filing of objections, the trial court adopted the magistrate's order, granting the motion to stay and requiring a bond. CBD LP and RSJJ did not post the bond and instead filed a notice of appeal of the stay order.

{¶6} This court sua sponte ordered appellants' three appeals to be consolidated. In total, appellants bring nine assignments of error:

1. The Trial Court Erred in Granting the City's Motion for Summary Judgment.

2. The Trial Court Improperly Determined That The City Was Acting In A Governmental Capacity.

3. The Trial Court Improperly Concluded That The City Was Not Estopped From Proceeding With Its Requested Remedies.

4. The Trial Court Improperly Granted Relief Which Was Not Requested By The City.

4

5. The Trial Court Erred By Issuing A Writ Of Possession After An Appeal Had Been Filed.

6. The Issues Raised By The Motions For Stay Were Never Referred To The Magistrate.

7. The Use of a Magistrate's Order to Resolve the Motions for Stay Is Improper.

8. The Lower Court Erred By Establishing A Bond In Any Dollar Amount.

9. The Amount Of The Bond Was Improperly Established.

## II. Jurisdiction

{¶7} As an initial matter, we note that the trial court's issuance of a writ of restitution and a writ of forcible entry and detainer is a final appealable order, notwithstanding unresolved claims at the time appellants filed their notices of appeal. *See Dixon v. Anderson*, 1st Dist. Hamilton No. C-170418, 2018-Ohio-2312, ¶ 4 (holding Civ.R. 54(B) inapplicable in forcible-entry-and-detainer proceedings). Therefore, we have jurisdiction over this appeal.

## III. Grant of Partial Summary Judgment

{¶8} Appellate courts must conduct a de novo review of a trial court's grant of summary judgment. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). A trial court may grant summary judgment when (1) the moving party demonstrates there is no genuine issue of material fact, (2) reasonable minds can come to only one conclusion, after the evidence is construed most strongly in the nonmoving party's favor, and that conclusion is adverse to the opposing party, and (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56.

5

### 1. Governmental Function Versus Proprietary Function

{¶1} Appellants asserted equitable defenses of laches, estoppel, and waiver against the city's forcible-entry-and-detainer claims. The Ohio Supreme Court in *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, ¶ 16, held that "the doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function." In reaching its conclusion, the court relied on the common-law principles set forth in *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145-46, 555 N.E.2d 630 (1990) ("It is well-settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function."), and *Besl Corp. v. Pub. Util. Comm.*, 45 Ohio St.2d 146, 150, 341 N.E.2d 835 (1976) ("Generally, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function.").

{¶2} In order to resolve the first three assignments of error, we must resolve appellants' second assignment of error first: whether the trial court improperly determined that the city was acting in a governmental capacity. Appellants argue that, while the decision to enter into the leases may have been a governmental function, the decision to enforce them was a proprietary function. Appellants essentially contend that the city, by enforcing the leases, acted as a landlord of commercial property.

{¶3} The city points us to the Political Subdivision Tort Liability Act, R.C. 2744.01-2744.11, to help us determine whether the city was engaged in a governmental function in this case. Appellants argue that the Political Subdivision Tort Liability Act applies only when tort claims are being asserted against a governmental agency, and therefore, has limited applicability. We agree. *See* R.C. 2744.09 (the Political Subdivision Tort Liability Act does not apply to "[c]ivil actions that seek to recover

damages from a political subdivision * * * for contractual liability."). However, Ohio courts often look to the Act to define what acts constitute governmental functions for purposes of immunity from estoppel claims. *See Hortman* (following R.C. 2744.01(C)(2)(e)'s designation of road maintenance and repair as a governmental function); *see also Kenney v. City of Cleveland*, 8th Dist. Cuyahoga No. 105664, 2018-Ohio-1186 (following R.C. 2744.01(G)(2)(c)'s designation of "operation of a utility" as a proprietary function). Therefore, the Political Subdivision Tort Liability Act is relevant in determining not whether the city is immune from equitable defenses, but whether the city acted in a governmental capacity.

{¶4} Both parties agree that the leases were entered into pursuant to an "urban renewal project." The Political Subdivision Tort Liability Act expressly defines governmental function to include "[u]rban renewal projects and the elimination of slum conditions." R.C. 2744.01(C)(2)(q). The Act also defines governmental function to include the maintenance and operation of buildings that are used in connection with the performance of a governmental function. R.C. 2744.01(C)(2)(g).

{¶5} Prior to the formation of the leases, the city of Cincinnati prepared and approved an urban renewal plan for the Central Business District Core Urban Renewal Project (the "Project"). The urban renewal plan included the property which is the subject of this appeal, and the city purchased the property as part of the Project. Through execution of the leases, the city sought redevelopers to ameliorate the blighted project area. The terms of the leases expressly provided for adherence to the urban renewal plan covering the Project. More specifically, the leases provided that the city would lease the properties' air rights to appellants and, in return, appellants would devote the properties only to uses specified in the relevant urban renewal plan.

{¶6}    Notably, unlike a private, commercial landlord, the city did not embark upon business enterprises for its own profit. Rather, the city embarked upon an urban renewal project for the "health, safety, morals, and welfare of its residents." This is evidenced by the unique terms of the leases. For example, the basic term of the office lease was 70 years and the basic term of the retail lease was 56 years. Furthermore, the office lease provided for a basic rental of one dollar payable annually and an additional rental equal to five percent of the gross cash flow derived by CBD LP each fiscal year. Given the specific terms and language of the leases, the city's acts were in furtherance of an agreed upon "urban renewal project."

{¶7}    This court came to a similar conclusion in *Inwood Village v. Cincinnati*, 1st Dist. Hamilton No. C-110117, 2011-Ohio-6632. In *Inwood Village*, plaintiffs-developers brought an action for promissory estoppel against the city for its failure to provide anticipated funding for an urban renewal project. *Id.* at ¶ 1. This court found that "the General Assembly has expressly defined '[u]rban renewal projects and the elimination of slum conditions' as governmental functions." *Id.* at ¶ 4 (quoting R.C. 2744.01(C)(2)(q)). Determining that the city's actions were in furtherance of a governmental function under R.C. 2744.01(C)(2)(q), this court held that the city was immune from the developers' promissory-estoppel claims. *Id.* at ¶ 15. To now hold that the city's enforcement of a lease under an urban renewal project is not a governmental function would be an unsound application of *Inwood Village*.

{¶8}    Because R.C. 2744.01(C)(2) expressly lists both urban renewal projects and the operation of buildings in connection therewith as governmental functions, we reject the appellants' contention that the city's decision to enforce the leases was a proprietary function. We find instead that the operation of buildings used in

connection with an urban renewal project through lease enforcement falls within the ambit of governmental function. The second assignment of error is overruled.

## 2. Equitable Defenses

{¶9} In their third assignment of error, appellants contend that the trial court improperly concluded that the city was not estopped from proceeding with its requested remedies. Appellants argue that certain equitable principles prevent the city from seeking relief under the leases after decades of nonenforcement.

{¶10} As discussed above, the Ohio Supreme Court has held that "[g]enerally, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function." *Besl Corp.,* 45 Ohio St.2d at 150, 341 N.E.2d 835; *see Hortman*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, at ¶ 16. The principle that political subdivisions are immune from equitable defenses is based upon the public policy in enforcement of the law and protection of the public interest. *Ohio State Bd. of Pharmacy*, 51 Ohio St.3d at 146, 555 N.E.2d 630. A political subdivision cannot be estopped from performing a government function, and exercising its duty to protect the public welfare, simply because it failed to act within a timely manner. *Id.*

{¶11} The city can be estopped only with respect to acts done in the exercise of a proprietary function. Because the city's actions were in furtherance of an "urban renewal project" constituting a governmental function, it is immune from appellants' equitable defenses. The third assignment of error is overruled.

## 3. Genuine Issue of Material Fact

{¶12} In their first assignment of error, appellants contend that genuine issues of material fact exist which prevented the trial court from granting the city's motion for partial summary judgment. In particular, appellants argue that Goldschmidt's affidavit presented genuine issues of material fact as to their equitable defenses.

9

{¶13} Based on our dispositions of the second and third assignments of error, the city is immune from equitable defenses. Therefore, there is no genuine issue of material fact, and we hold that the city is entitled to judgment as a matter of law. The first assignment of error is overruled. Accordingly, we affirm the trial court's grant of partial summary judgment.

### 4. Relief Not Requested

{¶14} In their fourth assignment of error, appellants argue that the trial court erred by granting relief which the city did not request and which was never argued before the magistrate.

{¶15} Civ.R. 54 provides, "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded the relief in the pleadings*." (Emphasis added.) Therefore, the trial court may award any judgment that is equitable considering the issues raised in the pleadings. *State ex rel. Blackwell v. Bachrach*, 166 Ohio St. 301, 303, 143 N.E.2d 127 (1957).

{¶16} Finding that the city was entitled to a writ of possession, the court directed appellants to turn over several items, including lease documents, building documents, alarm codes, elevator codes, and building keys. CBD LP and RSJJ never presented an argument to establish why the city was not entitled to such relief. Instead, CBD LP and RSJJ raise error with the fact that the city never demanded the specific relief granted. However, the relief granted effectuates the trial court's order of possession, and thus, is equitable under the circumstances. Therefore, we hold that the trial court acted properly in granting such relief. The fourth assignment of error is overruled.

5.   Writ of Possession

{¶17}   In their fifth assignment of error, appellants argue that the trial court erred by issuing a writ of possession and a writ of forcible entry and detainer after the appeal numbered C-170526 had been filed.  Appellants contend that the notice of appeal divested the trial court of jurisdiction to issue the writs.

{¶18}   An appeal does not deprive the trial court of its authority to enforce its own judgment.  *State v. Lett*, 58 Ohio App.2d 45, 47, 388 N.E.2d 1386 (1st Dist.1978).  Rather, the trial court retains jurisdiction over execution of its judgment until the appellant obtains a stay of execution and executes a supersedeas bond.  *State ex rel. Klein v. Chorpening,* 6 Ohio St.3d 3, 4, 450 N.E.2d 1161 (1983), citing R.C. 2505.09.

{¶19}   Here, the trial court issued a writ of restitution and a writ of forcible entry and detainer after CBD LP and RSJJ filed a notice of appeal.  The writs constitute actions taken to enforce the trial court's earlier judgment.  While the record reveals that the trial court later granted a stay of execution, CBD LP and RSJJ did not post the requisite bond.  Therefore, the trial court was permitted to grant and execute the writ of restitution and the writ of forcible entry and detainer.  The fifth assignment of error is overruled.

### IV.  Stay of Execution

{¶20}   Having found assignments of error one through five to be without merit, we affirm the trial court's judgments.  Assignments of error six through nine, which concern the stay of execution, are thereby rendered moot.

### V.  Summary

{¶21}   In sum, the trial court did not err in granting partial summary judgment and a writ of forcible entry and detainer.  Consequently, we overrule appellants' assignments of error and affirm the trial court's judgments.

11

Judgments affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

    The court has recorded its own entry on the date of the release of this opinion.

